Good afternoon. Welcome. First case this afternoon is In Re Image Masters. Mr. Koren. Are we ready? Yes.  Good afternoon. May it please the court. My name is Stephen Koren and I represent Lynn Feldman, the chapter seven trustee of Image Masters. As as the court is aware from the brief briefs, this case has had an odyssey over many, many years through a number of courts. It's a few different bankruptcy judges trip to the district court, back to the bankruptcy court, back to the district court, and now here to hopefully come close to putting an end to this case. I would suggest the end is to send it back to the district court so that we can have the trial to which we believe the chapter seven trustee is entitled. I'd like to just focus on on a few points. I think the briefs were comprehensive and I don't intend to read to the court. In our financial system. Sorry, did you want to reserve any time for rebuttal? I did. I apologize. I reserved five minutes. OK, thanks. Yes. In our system, we rely on financial institutions to be diligent and to and to keep an eye out for fraud and whether to protect the integrity of the system. And it is rather important. And they hold a unique place in the system and a unique ability, given their resources and experience to play that role. This case is about financial institutions that unfortunately turned a blind eye to red flags for fraud. We're talking about two sets of financial institutions. We're talking about for purposes of this appeal, city mortgage. And then we're talking about the government sponsoring. Absolutely. All right. Let me focus for a moment on the government sponsored entities and the allegation that they turned a blind eye to red flags. What evidence is there in the record that the red flags that Fannie Mae or Freddie Mac saw any red flags? The the the evidence there is the agency relationship and what the banks knew was imputed to them, given the bank's role as servicers and agents on their behalf. So I'm not suggesting there's evidence that they had a direct view of red flags or they had observed them or commented on them. So if we reject your agency theory, should we apply hold of the good faith defense applies as to them? Well, that's interesting. I think the answer is probably yes. I think that we can't get to on inquiry notice, so to speak, of red flags unless the agency theory applies. And am I correct that that would resolve all claims as to them as to the GSEs, the government sponsored entity? I believe that's correct. OK, you can continue. I believe that is correct. Sorry to have to say it, but I think it's correct. I appreciate it. Can you show the evidence for us on the agency theory? You know, I think weighing fairly strongly against you is the actual agreement that says they're not an agent. And there's discussion in the briefs about, I think, the other aspects of the agreements and the page count and the volume of the pages. What is your best evidence to get to a disputed issue on that? Well, because as a matter of law, they have to be agents. What are they doing? They are acting on behalf of a potential purchaser or an actual purchaser, and they're servicing the mortgages after they have been purchased by the government sponsored agencies. They're acting on their behalf. What other role could they be playing? You can't take a piece of paper that says you're not our agent. But in fact, as a matter of law, you are. They are the only ones which are who are interacting at the first level with the homeowners. They're the only ones that have information concerning the transfers. They're the only ones who who play that role. And I don't think it matters what a piece of paper says. The function is that of an agent on their behalf. And how else would you put them on notice of any? They're acting through up through another party who is gathering information, gathering payments and passing along. What could that role be other than as an agent? I would submit. And we don't have that with respect to all of the documents. But I would submit that as a matter of law, they're agents. It doesn't matter what those documents say. They have to be playing that role. What about an independent contractor relationship? Well, they may be an independent contractor in the sense of they control the manner in which they perform their services. And there may be aspects of it. But in terms of of gathering and passing along information, you know, just think about how they could immunize themselves for they could never be responsible as a subsequent transferee. In a fraudulent transfer case, if they if they can always say, hey, they're not our agents. We didn't know. They didn't they didn't tell us. And the fact of the matter is what if if they didn't pass along what they knew, I think that it makes no sense as a legal principle to immunize them. They have to be acting through an agent in that in that role, whether or not they could be an independent contractor for certain purposes, which which may limit liability in certain respects, unrelated to receiving money and passing along and receiving information. There could be other potential claims that that status may protect them from. But I don't see as a matter of public policy or what an agency relationship is, how that could apply here. Whether they were or weren't agents, let's talk about the bank for a minute. If Citi had investigated the red flags, wouldn't it have had to rely on image masters for a lot of important information and image masters had every incentive not to tell the truth and to hide things and so on? Well, I think the answer is that would be no. All they had to do was pick up the phone and call the homeowner. I mean, image they have no relationship with image masters. So image masters is not a customer. They don't have a mortgage. They're they're a third party interloper, so to speak. So their customer is the homeowner. That's that's who they should call. Doesn't mean you don't talk to image masters. But if you talk to image masters and then you talk to the homeowner, bells would go off because the homeowners are going to tell you either. Who are you? We don't have a relationship with you. Or what are you talking about? We have a deal with image masters. We pay them less money and they're supposed to make up the shortfall on our mortgage. Anyone who hears that is going to have a further investigation and then you're going to you're going to get to the bottom of it. And I want to make sure I have the evidence, the red flags, as I understand it. There is one call with the homeowner. There are over 100 payments from image masters and there are the change of address forms. Am I missing any? You have the change of address forms. You have the payments from a third party, which is a very large red flag based on available information and law enforcement guidance. And then you have under certain circumstances, for example, SunTrust, you had 30 or so phone calls, which which sent out a loud and clear message. Now, obviously, that in this appeal, SunTrust is no longer. We settled recently with SunTrust. But the reality is to the extent the there's a government sponsored entity, which is a recipient of SunTrust, and they had that knowledge and information. And I persuade the court that the agency theory does apply. That information would be relevant in terms of the second tier responsibility. If we if we focus only on Citi, I think the record shows only one interaction over over a period of time. So I don't think there's a large body of evidence there having to do with the customer relationship. We would rely there on the payments by third parties and and the change of address forms, which are red flags of fraud. What should we do with the assertion from your friends on the other side that change of address forms were customary and it was the practice to honor them? And that payments from third parties were customary such that that shouldn't be a red flag? What's what's what is the response? Well, the response is that the district court found it is, in fact, a red flag. And the response is that the literature and the guidance from Fannie and Freddie and the FBI tell you that they are red flags. So therefore, you can't ignore them. They you know, could they be innocent perhaps? But in fact, when you get a change of address form very quickly after a mortgage is initiated by someone who is living in the home, it's not an investment property. That is a very large red flag. And we do we had both the bankruptcy court and the district court at least agreeing on that. And I would submit to you that the fact that it's a, you know, a practice doesn't mean you don't have a duty to investigate. In fact, you do. And, you know, you think about it from a third party. We're not we're not talking about a bank. We're not talking about a well-known Apple pay or this pay where everybody knows that's the business they're in. We're talking about an entity which nobody probably has ever heard of. And if you started just picking up the phone and calling some homeowners, I'm not so sure you would have done much of an investigation to be to get more suspicious and more suspicious. Where where you find out that, you know, numerous homeowners and there were 800 of them, you know, are saying some things about image masters, which which are screaming fraud. I'll ask you some questions about the subsequent new value offset. Can you tell me where exactly in the statute the offset is limited to transactions between the debtor and the preference creditor? Yeah, let me let me pull up the language if I may. Section 547 C4 of the of the bankruptcy code. I know my my time has expired. And it's OK. You're on time now. All right. Fair enough. 547 C4, the trustee may not avoid transfer, quote, to or for the benefit of a creditor to the extent that after such transfer, such creditor gave new value to or for the benefit of the debtor. Is your weight on such? Yes. The creditor that got the money is the bank. The so-called new value didn't come from the bank under the determination of the of the district court. It came from the Ponzi scheme victims, the homeowners. They are not such creditor that advanced the transfer that the trustee seeks to avoid. There's a mismatch. So you don't dispute that the homeowners could could benefit would benefit from the subsequent new value offset. Well, not really. For example, the whole nature of Ponzi schemes, homeowner A may get a benefit because it was stolen by someone else. That's the Rob Peter to pay Paul. So if you look at the totality, there is no benefit to a homeowner. There's a theft from one to pay down the obligation of the other. But the transfer that we're seeking to avoid has nothing to do with that. It has to do with the transfer to the bank. And the bank was not the creditor that provided new value. The plain language of the statute forecloses that defense. I take it then that you disagree with the Eighth Circuit's LG case. I do. And I know it just it doesn't make any sense. It doesn't. And and there is if I recall the case, I don't think we're dealing with a Ponzi scheme. And I don't think we're dealing with situations where you're stealing from one to pay the other. And somehow that's providing a benefit that that ought to be recognized. Is that the distinction of that? Is that what your issue with that case is a Ponzi scheme? It does have the third party transaction very similar to here, but not the Ponzi scheme. So would that be your way to distinguish? That is an important distinction that I would that I would say. And to the extent that's not good enough, I would disagree with the I would say it rewrites the statute. And that's and that's not the role of Congress intended that that could have written the statute. Before you sit down, can you tell us why city and the DSC's were not conduits and they didn't exercise dominion and control over these funds? Well, I think that they were not conduits because they did exercise dominion and control, because, in fact, it was they were receiving money to satisfy a debt to them. The fact that they then have a contractual relationship to pass the money along to someone else doesn't change the analysis. When, in fact, you are satisfying a debt to you. You're not a conduit. The conduit is the third party who never has a debt, doesn't have a relationship. And you're trying to protect someone with the money just passes through and they have no other relationship other than the conduit. That is not the case here. You sit down. Your friends on the other side say that there's a question about whether or not who has the burden here. Your friends on the other side say, well, it's the trustee's burden to prove that you're transferring. And the trustee doesn't prove that you're transferring. If you are a mere conduit, can you tell us why this is a defense rather than an element that the trustee has to prove? Matt, let me let me think for one second before I speak on that one. I think it's an affirmative defense because, in fact, you you are you are proving a transfer. There's no dispute. There's a transfer. The money goes to them. So the question becomes one of you, you, you, you got the transfer. Now you want to say, well, it doesn't count. I have a reason why, even though I did get the money, I got it on behalf of someone else. I don't think we have to prove, number one, you're a transferee. You got the transfer with it. That's undisputed. And now we have to disprove the role you played in connection with receiving that transfer. I think that once once you approve the transfer, the burden shifts to the person who received the transfer to provide a defense, if there is, for why that's not avoidable. Is there any case that supports that or is it just a common sense interpretation? Well, I'll go with the common sense interpretation now. And I can't answer the question as to whether there's a case to support it. I'll go home and look for one. All right. Thank you. Thank you. Thank you. Yeah. Good afternoon, Your Honor is Matthew Hammer match for city mortgage. Please, the court. I want to begin by just focusing on what I think are a few key facts for the court to consider and thinking about these issues that these appeals raise. First of all, you have image masters making regular monthly mortgage payments on time and in full to city mortgage, which is then transferring that money over to the actual owners of the mortgages. And these were payments on real mortgages, real people with real property who had actually signed mortgages. The Ponzi scheme that's going on here didn't involve the mortgage origination at all. And also, these weren't subprime loans or no document underwriting loans. These were people who had owned their houses for a long time and were refinancing them. And also, there's no dispute that city mortgage didn't know about the Ponzi scheme and certainly didn't participate in it. And you had an scheme that was going on for 20 years and regulators, the Pennsylvania Department of Baking and others were looking at it, who didn't find any any fraud anything going wrong until 2007 when the scheme fell apart and image masters filed for bankruptcy. And both the bankruptcy court and the district court here found that city mortgage acted in good faith, although for different reasons, which I would submit either of them could be sustained on this record. I'll make sure I understand the standard of review. So it's a good faith defense and motion for summary judgment. Correct. So what should we ask ourselves? Whether there is a dispute, I think it's a de novo review of whether there is a dispute of material fact, genuine dispute about whether we met our burden of presenting evidence to show that city mortgage acted in good faith. Does that essentially mean that we have to determine that no reasonable juror would have concluded that you didn't act in good faith? Correct. Okay. Correct. And I think you can do that here. I think Judge Montgomery is watching up. What are the red flags here? And I'm happy to go through them particularly. But I think if you look at the record, particularly the sources Mr. Corrin referenced from the I think the FBI and Fannie Mae and Freddie Mac of what mortgage services should be looking for. They talk about these. They do talk about these red flags, like changing addresses and third party payments. But what they're talking about is something completely different, which I mentioned a minute ago. Those are red flags of mortgage fraud or mortgage origination fraud, meaning that there's a mortgage that the servicer is presented with that someone other than the homeowner signed or that there was no real property. So if you see those red flags, what you're supposed to do is go out there and look and see, is there a property? Is there an actual homeowner? Did they the real homeowner sign that? And if city mortgage had done that here, what they would have found out was it was a real mortgage. There were real people. There were real homeowners. They signed those mortgages. They got their mortgages notarized. And they were making payments to Image Masters. And Image Masters was making those payments in full and on time until 2007 to city mortgage. Were there other third parties making payments like this? I don't know that there's evidence in the record about specific third parties making these payments, but our experts opined that there were this was a standard practice in the industry. And I believe the defendants, the trustees, experts conceded that this was not an unusual practice in the industry. Your Honor, Judge Montgomery, you've asked about the new value defense, and I want to talk about that a little bit. Because I think Mr. Koren, my friend, has it completely wrong for a couple of reasons. First of all, the statute is clear. It says two things. There has to be a transfer to or for the benefit of a creditor, to or for the benefit of a creditor. And then that creditor, such creditor, has to provide new value to the debtor. What's critical here and what I think Mr. Koren got wrong, even looking at his complaint, is who the relevant creditor here is. If you look at their complaint, and it's paragraph 112. I don't have the joint appendix page number here, but it's in there. On paragraph 112 of the third amended complaint, they say the homeowners were the creditor of ImageMasters that they're talking about and thinking about the preference claim. So look at what happened here. You have ImageMasters making a payment to the city mortgage or other servicers. That payment is in order to make a monthly mortgage payment on behalf of, for the benefit of, the homeowner, the creditor. And then the way this deal worked was that each month the homeowners would make a payment to ImageMasters. And then subsequently ImageMasters would make the monthly payment to the servicer. But then the next month, the homeowner would make a new payment. So the homeowner, the creditor, such creditor, then makes a subsequent payment. And we went through carefully, and I think the district court looked at each individual homeowner. And there's charts you can look at in the joint appendix showing for each homeowner what they paid each month, what ImageMasters paid, and what the homeowner then paid the next month, which is what the credit for the subsequent new value is. So you're not taking issue with the interpretation of the language. You're just saying that such creditor is the homeowner. Well, so I think, first of all, the creditor, the relevant creditor is the homeowner. The language of the statute is clear. I think he's incorrect in saying it doesn't apply to three-way transactions because it's transfers to or for the benefit of. So it could be a transfer. The preference could be a transfer to someone other than the creditor as long as it benefits the creditor, which is precisely what's going on here when ImageMasters is making the monthly mortgage payments. And I disagree with his view of the LGI case. I think that clearly does support the argument we're making here, and I think it cites other cases from other circuits which support the same conclusion. Judge Porter, you asked about the conduit issue and why that applies here. My client, City Mortgage, simply did not have dominion and control over the payments it was receiving from ImageMasters. Why not? Because City Mortgage, in the City Mortgage's case… Let me expand a little bit. Why not? As your friend says, it passed the money along because of its own independent contractual obligations, and that's not his business, that's your business. Correct. So respectfully, I disagree with my friend about what was going on here. In each case, City Mortgage briefly owned the mortgages, but then sold them on to Fannie Mae or Freddie Mac, which then securitized the trust.  Pardon me? Did they have legal title? They did not have legal title to the mortgages once they were sold, which happened very quickly. Before they sold them, how can you sell something you don't have legal title to? Well, there was a brief period of time when they had legal title. Is that relevant to the analysis? I think you'd have to look – well, I don't think it is for two reasons. One, once they sold the mortgages, they had no legal right to keep those payments. The owner of the mortgages is entitled to the payments. Why isn't the fact that they had legal title, however brief it was, evidence that they were not mere conduits? Because you have to look at the transfer that happened in each case. And when you have – I think it's irrelevant in that situation that City Mortgage owned it for a period of time. If they hadn't owned it for a period of time, they wouldn't have been the servicer, I think. They are servicers, and they have a – I suppose they have a contractual duty as servicer to pass on the payments, but they're not payments. Once they sell the mortgage to Fannie Mae or Freddie Mac or the Securitization Trust, City Mortgage doesn't have any legal right to keep them at all. Their only obligation is to pass that on, whether it's under the contract or an unjust enrichment theory or money hadn't received. I don't know. They have no legal right and only an absolute obligation to pass those payments on to the homeowner – sorry, to the owner of the mortgages. Apologies. You said dominion and control. I've looked at the various circuits and how they've described these. Some say dominion, some say control, some say dominion and control. Do you have a preference between those tests, and if so, which one? I've looked at that also, and I'm honestly stymied and trying to come up with an explanation of what the difference is. But I think it's pretty straightforward here, and under any way of looking at it, my client, City Mortgage, was a mere conduit. And I think also on the burden of proof issue, I think Judge Montgomery Reeves, you raised, I think it's clear that it's a defense in the sense that it's something that the defendant has to raise, but it's not an affirmative defense. The question is whether they are a transferee, which is an element of the statute under Section 558. And if it's an element of the claim under the statute, that's something that the trustee has a burden of proof on. There is, I think, in ComNet, one of the cases we cited from the Ninth Circuit addresses that issue specifically and says that the trustee bears the burden of proof. I do think there are a couple of cases, Harbor and Harwell from the Fourth and Eleventh Circuits, which may say that the defendant bears the burden of proof. But those are the cases, remember, that are looking at as an equitable defense where good faith is relevant. And I agree that if you're going to think about it as a good faith defense rather than an element of the statute, then the defendant would bear the burden of proof. But I don't think that's a proper reading of the statute. Your friend said you're not conduits because the money was paid to satisfy a debt to you. Do you take issue with that? I think once the mortgages are sold to the securitization trust, they're not a debt owed to city mortgage. And I think the fact that they were at one point a debt owed to city mortgage is irrelevant. And I think also the fact that the trustee raised in their briefs that the homeowners and image masters may not have been aware that they were more they were they were transferred to third parties is irrelevant. The essential point is that city mortgage had no right to the payments at that point. Is it the case that any transferee can become a mere conduit by contracting with a third party? I'm not sure. And I don't think you have to reach that issue because it's not really a contractual issue here. It's the transfer of the mortgage completely. And that's a transfer of an interest in real estate. And the question is, who's entitled to that payment based on the ownership of the real estate? For example, if there was a foreclosure and there was proceeds of the foreclosure sale that clearly would go not to city mortgage, but to the owner of the securitization trust that owns the mortgage. And unless you have any further questions, thank you for your time. OK, thank you. Thank you. Thank you. Thank you. Good afternoon, your honors, and may it please the court. Grace Simmons for Freddie Mac and Fannie Mae, the government sponsored enterprises or GSEs. This is a straightforward case, and it is even more straightforward as to the GSEs. As my friend for city mortgages explained today, the servicers here did not turn a blind eye to these red flags. And the GSE certainly didn't because they never saw a single red flag, not a check, not a communication with the customer, not a single change of address. They saw nothing that could have put them on notice of a Ponzi scheme. That is the epitome of good faith. And that alone is enough to affirm the judgment below. Your friends on the other side admit that the only way they get to your client is through the agency theory. So can you respond to that? Of course, your honor. Twofold. One, that that theory fails on the merits. The servicers are independent contractors of the GSEs, not agents. The contract makes that clear as the line of questioning that Judge Bovey went down with my friend. And that is not only in the contract, but it's reflected in the reality of that relationship. Freddie Mac and Fannie Mae hold millions of mortgages. They contract with hundreds of servicers. They provide a servicing guide to set minimum standards, but they never dictate or micromanage how the servicers are supposed to handle those accounts. They're supposed to apply their expertise and discretion, their sound professional judgment to collect the mortgage payments, handle customer disputes. And if and when it comes up, detect and handle fraud. Nothing that the trustee has pointed to today. Nothing in the servicing guides, nothing in the servicing contracts suggests that these servicers are anything other than independent contractors. And even if the servers servicers were agents under the Merrill doctrine, their unauthorized conduct, ignoring any alleged red flags still could not be imputed to the GSEs. But not only does this agency theory fail on the merits, it's also been forfeited twice. The trustee failed to timely raise this theory below. She doesn't say a word about agency in her complaint. The only theory articulated there is that the GSEs themselves saw the red flags. She didn't raise agency during discovery. She didn't conduct any discovery on agency. She didn't ask the GSEs or the servicers about their relationship. Her experts didn't raise agency. And when the trustee herself was deposed about how the how the GSEs could be held viable when they never themselves saw any red flags, she said, I don't recall. It wasn't until her opposition to our summary judgment motion after we pointed out that we shouldn't be in this suit because we didn't see any red flags ourselves that she offered agency. That was too late as the bankruptcy court recognized a plaintiff has to put a defendant on notice of agency in the complaint, or at the very least during discovery. She did not do so here and permitting her to have raised it late would have prejudiced the GSEs. After forfeiting agency below she then forfeited it on appeal by not raising in her opening brief to this court. Despite being on notice that she had to show how the GSEs themselves took these payments in bad faith, she barely said a word about us in the opening brief. Instead, she again waited until after we pointed out that we shouldn't be here to raise agency. That forfeiture is inexcusable. You say the GSEs didn't see any red flags, do you agree that they are red flags. Our position that your issues much I understand our position from the get go has been that that perhaps certain of these things could be in isolation could fall into the category of things that would count as red flags and other contacts, the GSEs position from the get go in this suit has been that all the servicers here acted reasonably that no reasonable servicer would have seen these particular three red flags in context and and engaged in the investigation, much less that the investigation would have revealed this Ponzi scheme that nobody else uncovered. Beyond good faith and unless the court has any further questions on good faith. I'll hit on the two other grounds that protect the GSEs in this suit, if we agree with you on good faith, do we need to deal with anything else. No, Your Honor, the good faith because we have been deemed subsequent transferees stipulated judgment that's under 550 that is a complete and total defense to any recovery here, we are happy for this court to affirm on good faith on that basis. The court only needs to reach the mere conduit and the security safe harbor as to us, if the court were to disagree with the district courts ruling on those issues. But to touch briefly on those one the GSEs are mere conduits for the mortgage payments for many of the same reasons as articulated by my friend for city mortgage today. The GSEs purchase mortgages bundle them into securitization trust that is what Congress set them up to do. Investors buy into those trusts they collect on the monthly mortgage payments, once the GSEs receive the funds from the servicers, they have no right to keep those funds. They have to pass those exact funds on to the trusts and then the investors, they're thus merely pass throughs for the funds. Second, and for similar reasons the GSEs are protected by the security safe harbor, because they receive these monthly mortgage payments in connection with securities contracts. Does that essentially mean that any mortgage that sold to the GSEs will be in connection with a securities contract? Yes, Your Honor. That would that would be our position. It is well recognized in the industry and it's standard practice. And this case is actually the perfect illustration about why the security safe harbor exists, the trustee here is trying to seek to claw back funds nearly 20 years later, those funds have long been distributed to the investors. That's exactly what the safe harbor was intended to avoid. For these reasons and those in our briefs we would ask the court affirm the judgment below. Thank you. Thank you. I want to turn back to the question of agency. Because I, I think we've addressed it in the brief and I want to bring it to the court's attention, because I think it's dispositive and it answers the question that in fact, the banks are agents on page we address this on page 23 of our fourth step brief. And we refer to the servicing guidelines. Before you go there, your friends on the other side say that's forfeit. You didn't address it in your first brief, look at Third Circuit law look at Barna that's forfeited. We don't address that. How do you respond to that. We address the fact of an agency relationship. I don't know that I don't know that we have to to anticipate what language they're going to raise or what contracts, they're going to raise because I, I view that essentially as a defense they're transferring. So what they're doing is they're, they are, there's no question they're a subsequent transferring when you say you address agency you're saying it wasn't forfeited it was raised in the opening. I believe it's within the scope of the opening brief. Yeah, the nature of the relationships because, because they are subsequent transfer ease as the court held the where we don't have to attack where we want we want on the issue of, of the fact that they are all subsequent transfer ease summary judgment was denied as respect to that. So, why don't we, why should we have to address and our opening brief matters that we want in the district court, we address them when they as caught on a cross appeal attack the district courts finding that they are subsequent transfer ease that answers the question. So what can imagine why I would do that and that was their issue to raise exactly cross appeal and so the first time you really should have addressed it at all, is in your response to the cross. That, that absolutely right we want it below. They appealed that issue. And if I can turn to the merits of the issue as we raised on page 23 of our fourth step brief. The guides that they operate under and we we cite the record at the appendix at 4576 and I quote the servicer and its handling of these funds is acting on behalf of and as a fiduciary for Fannie Mae and other parties as their respective interests may appear. The Freddie Mac forum, which is at the record on 4602 states the servicer holds the funds in the deposit account in a fiduciary capacity. Fiduciaries as a matter of law are agents. They're not so called independent contractors or to the extent they can be both. They are agents, that's the whole nature of a fiduciary relationship. So in gathering the money and passing it along their fiduciaries agents, therefore, whatever the banks do is imputed to those in whom on whose behalf they're acting as a fiduciary. That that is just hornbuck fiduciary and agency law and and their servicing guides are pretty clear on the nature of the relationship. And we outline that in our brief on the question of conduit defenses in an affirmative defense, or is it something we have to plead? We do note in our principal brief on page three that as far as the 11th circuits concerned, it's an affirmative defense. And for the reasons that I argued initially, I would submit the 11th circuit got that one right. Thank you very much. Thank you. Yeah, right. We'll take the matter under advisement. Thank you.